THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 The State, Respondent,
 
 
 
 
 

v.

 
 
 
 
 Joseph Charles Haymes, Appellant.
 
 
 
 
 

Appeal From Greenwood County
 J. Cordell Maddox, Jr., Circuit Court
Judge

Unpublished Opinion No.  2010-UP-559  
 Submitted September 1, 2010  Filed
December 23, 2010

AFFIRMED

 
 
 
 Chief Appellate Defender Robert M. Dudek,
 of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief
 Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General
 Donald J. Zelenka, Assistant Attorney General Melody J. Brown, all of Columbia,
 Jerry W. Peace, of Greenwood, for Respondent.
 
 
 

PER CURIAM: Joseph Carl Haymes appeals his
 convictions for murder, armed robbery, grand larceny, and possession of a
 firearm during the commission of a violent crime.  Haymes argues the trial
 judge erred in admitting (1) hearsay testimony from an investigator and (2) an
 inculpatory statement Haymes made to law enforcement.  We affirm.[1]
Haymes knew the
 victim, Billy Ray Adams, and was with Adams when he died.  When Haymes was
 apprehended, he gave conflicting statements to law enforcement.  Haymes initially
 claimed Adams' death was accidental, but later admitted in a written statement
 he shot Adams because he was angry about having to pay Adams a court-ordered
 debt in a breach of trust case involving automobiles.  In a subsequent written
 statement, Haymes maintained he shot Adams in self defense.  This was the
 position Haymes asserted at trial.  Haymes' appeal concerns the trial court's
 admission of two statements that discredit this claim.
1. Haymes first alleges error
 in allowing Investigator John Murray to testify that in his efforts to locate
 the pistol that Adams allegedly had on his person when Haymes shot him,
 Murray's office "checked with family members" and "[n]o family
 members were aware of [Adams] every carrying 25 automatics." (Emphasis
 added.)  At trial, Haymes contended the statement was hearsay, but the trial
 judge overruled the objection without further argument from counsel.
In response to
 Haymes' argument that the testimony was inadmissible hearsay, the State argues (1)
 the testimony was not an assertion that was admitted for the truth of the
 matter asserted and (2) if testimony was hearsay and erroneously admitted, the
 error is harmless because it was cumulative to evidence elicited by the defense
 from Adams' brother.  We disagree with both assertions.  The State's first argument,
 that the testimony was offered only to explain why law enforcement was not able
 to find the pistol that Adams allegedly had with him when he died, does not
 answer Haymes' argument that the statements Adams' family members allegedly
 made to law enforcement directly contradicted Haymes' testimony that Adams always
 kept a pistol in his jacket pocket and was armed at the time of the shooting. 
 As to whether the testimony was merely cumulative to other evidence, the
 testimony cited by the State to support this argument came from Adams' brother,
 who on cross-examination by the defense indicated he knew only that Adams had
 some guns but did not know what kind they were.  Unlike the testimony that
 Haymes sought to exclude, this statement does not address the questions of
 whether Adams was known to carry a gun on his person and whether he was armed
 at the time of his death.
Nevertheless, we
 hold the trial judge's refusal to suppress the disputed testimony was harmless
 in view of overwhelming evidence of Haymes' guilt.  See State v.
 Kilgore, 325 S.C. 188, 191-92, 480 S.E.2d 736, 737 (1997) (finding
 "beyond a reasonable doubt" that even if the trial judge erred in
 admitting certain testimony, the error did not contribute to the verdict in
 view of "overwhelming evidence" of the defendant's guilt).  Haymes testified
 before the jury that he shot Adams.  There was undisputed forensic evidence
 that Adams was struck from behind and shot in the back "execution
 style."  Haymes also gave conflicting accounts about Adams' death,
 claiming first that it was accidental and later that it resulted from Haymes'
 attempt to defend himself.  Furthermore, Haymes appropriated and sold items of
 value belonging to Adams after killing him.  In contrast to a written statement
 admitted without objection in which Haymes stated he sold Adams' pistol to an
 acquaintance for $325, the acquaintance testified at trial that he purchased
 only a shotgun and a rifle from Haymes and paid a total of only $200 for both
 weapons.  Finally, the issue of whether Adams was armed or known to carry a firearm
 was not dispositive of Haymes' claim of self-defense, which required Haymes to
 establish that (1) he was without fault in bringing on the difficulty, (2) he
 actually believed he faced imminent danger of losing his life or sustaining
 serious bodily injury, (3) a reasonable and prudent person of ordinary fitness
 and courage would have entertained the same belief, and (4) he had no other
 probable means of avoiding danger.  State v. Santiago, 370 S.C. 153,
 159, 634 S.E.2d 23, 27 (Ct. App. 2006).  Here, there was uncontroverted
 evidence that Haymes was the initial aggressor and that Adams was attacked from
 behind, which would indicate respectively that Haymes was at fault in bringing
 on the difficulty and had other means of avoiding death or injury.
2. Haymes next contends
 the trial judge should not have admitted a written statement in which he
 admitted he "got pissed off" at Adams because of some prior
 litigation between the two.  He contended at trial and on appeal that he made
 this statement after receiving defective Miranda warnings advising him
 that (1) any statement he made could be used for or against him in court and
 (2) if he could not afford a lawyer, he could apply to the court to have one
 appointed for him without charge.[2] 
 We find no error in the admission of this statement.
"A waiver of Miranda rights is determined from the totality of the
 circumstances."  State v. Tyson, 283 S.C. 375, 378, 323 S.E.2d 770,
 771 (1984).  Full Miranda warnings that are understood by a suspect are
 sufficient to "negate any defect in  . . . later warnings."  Id.  
In support of his
 argument that he is entitled to a new trial because of defective Miranda warnings, Haymes cites U.S. v. Connell, 869 F.2d 1349 (9th Cir. 1989), Groshart
 v. U.S., 392 F.2d 172 (9th Cir. 1968), and Mayfield v. State, 736
 S.W.2d 12 (1987).  In none of these cases, however, did the defendant receive
 full Miranda warnings that would have overridden any inadequacies in
 subsequent warnings.  Here, Haymes received an initial reading of Miranda rights that did not contain any of the flaws he contends tainted the warnings
 at issue in this appeal.  This initial reading took place not more than one
 hour before he received the warnings with the language that he claims mislead
 him into making incriminating statements.  Haymes has not challenged the
 constitutional sufficiency of the initial reading of his Miranda rights
 or contended that his understanding of his rights was compromised by the
 alleged deficiencies in the later readings.  We, therefore, affirm the
 admission of the disputed statement. 
AFFIRMED.
SHORT, THOMAS,
 and LOCKEMY, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]   See Miranda v. Arizona, 384 U.S. 436
 (1966).