23900

The STATE, Respondent v. Eric Douglas LOWRY, Petitioner.

(434 S.E. (2d) 272)

Supreme Court

*David I. Bruck;* and *South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.* and *Asst. Atty. Gen. Rakale B. Smith,* Columbia; and *Sol. Larry F. Grant,* of York, for respondent.

Heard June 8, 1993.

Decided July 12, 1993.

HARWELL, Chief Justice:

We granted petitioner Eric Douglas Lowry's petition for writ of certiorari to review the Court of Appeals' decision in *State v. Lowry*, ___ S.C. ___, 424 S.E. (2d) 549 (Ct. App. 1992). Lowry contends that the Court of Appeals erred in ruling that he was not entitled to a charge on voluntary manslaughter. We agree, and reverse and remand for a new trial.

## I. FACTS

In December 1990 Lowry and some friends were drinking beer outside a family-run grocery store in York. The decedent approached the group and began berating Lowry. The two men commenced arguing and "bumped chests," although no blows were exchanged. Lowry aimed a pistol at the decendent and pulled the trigger, but the pistol was unloaded. One of Lowry's companions broke up the fight, and the decedent went into the grocery store. Shortly thereafter, Lowry loaded a clip of ammunition into his pistol, fired a single shot into a sign located nearby, and followed decedent into the grocery store. The two men began arguing and shouting at each other again.

The facts are disputed as to the events that followed. According to the State's witnesses, Lowery challenged the decedent to "take it outside," to which the decedent replied, "Man, I am unarmed. Do you expect me to walk outside and let you kill me?" To show he had no weapon, the decedent spread his arms away from his body. Conversely, Lowry's witnesses testified that the decedent belittled Lowry by telling him, "You think your are a big man because you got a gun." The decedent then moved toward Lowry in a menacing fashion with his arms and hands outstretched toward Lowry as if to grab him.

It is uncontroverted that after the decedent raised his arms, Lowry shot him in the chest. After the decedent fell, Lowry cursed him and shot him again, this time in the head.

The trial judge instructed the jury as to murder and self-defense, but declined to charge the jury as to voluntary manslaughter. Lowry was found guilty of murder and sentenced to life in prison. The Court of Appeals affirmed.

## II. DISCUSSION

Lowry asserts that the evidence supported a jury instruction regarding voluntary manslaughter. We agree.

Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Davis,* 278 S.C. 544, 298 S.E. (2d) 778 (1983). "Sudden heat of passion upon sufficent legal provocation" that mitigates a felonious killing to manslaughter must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called "an uncontrollable impulse to do violence." *State v. Gardner,* 219 S.C. 97, 64 S.E. (2d) 130 (1951) (citing *State v. Davis,* 50 S.C. 405, 27 S.E. 905 (1897)). Where death is caused by use of a deadly weapon, words alone, however opprobrious, are not sufficent to constitute a legal provocation. *Id.* 219 N.C. at 104, 64 S.E. (2d) at 134. Rather, when death is caused by the use of a deadly weapon, the opprobrious words must be accompanied by the appearance of an assault—by some overt, threatening act—which could have produced the heat of passion. *State v. Judge,* 208 S.C. 497, 38 S.E. (2d) 715 (1946).

Here, there is testimony which, if believed, tends to show that the decedent and Lowry were in a heated argument and that the decedent was about to initiate a physical encounter when the shooting occurred. To warrant a court's eliminating the offense of manslaughter, it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter. *State v. Norris,* 253 S.C. 31, 168 S.E. (2d) 564 (1969). We conclude that the trial judge erred in refusing to instruct the jury regarding the offense of voluntary manslaughter.

In affirming Lowry's conviction, the Court of Appeals relied on *State v. Gandy,* 283 S.C. 571, 324 S.E. (2d) 65 (1984), to support its conclusion that failure to charge voluntary manslaughter was harmless, because once the jury returned the verdict of murder, it had determined that the defendant had acted with malice, and thus could not have returned a verdict for the lesser offense. We rejected this reasoning in *Casey v. State,* 305 S.C. 445, 409 S.E. (2d) 391 (1991)

(expressly overruling in part *State v. Patrick*, 289 S.C. 301, 345 S.E. (2d) 481 (1986), and implicitly overruling *Gandy*, upon which *Patrick* relied). Even though the jury was not convinced that Lowery acted in self-defense, the jury could have discerned, consistent with the evidence, that there was sufficient legal provocation and heat of passion to find Lowry guilty of voluntary manslaughter. *See State v. Gilliam*, 296 S.C. 395, 397, 373 S.E. (2d) 596, 597 (1988).

The decision of the Court of Appeals is reversed, and the case remanded for a new trial.

Reversed and remanded.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.